May it please the Court, this is Douglas Kincaid for Plaintiff Appellant Brimstone Natural Resources et al. So this case, Your Honors, is a case of the plaintiff being unable to receive fair treatment for their land use choices, a fair review, and defendants expressly set out to thwart plaintiffs' plans despite the fact that they were very small scale and in line with all the relevant environmental regulations. Defendants, we believe, manipulated the administrative process to create an unwinnable game for plaintiffs to try to get through. I'm having a problem with that argument because there was an avenue for review, more specific review, and your client totally did not avail themselves of it. Why should they be able to come now and say I was denied due process when they declined the process they were offered? Respectfully, Your Honor, I disagree with the fact that they had an opportunity for review. A lot of the key facts in this case... Is there a dispute that they received that letter in 2015 that denied their application? Did they dispute that they just never got it? No, they did receive it, but a lot of the key facts that would underlie an opportunity for appeal did not take place until after 2015, until after that letter was sent. Isn't it possible that had they pursued appeal of that 2015 decision that those facts would have never happened because they would have already brought... My understanding is even at that moment they had arguments that they didn't think that the process they were being given was fair. There was no standard application process. There was a lot of uncertainty about which agencies were going to have to sign on or not. So there was already arguments that they thought that the bureaucracy was running amok, so to speak. So why shouldn't we say you should have exercised your rights in that moment and challenged those and brought those arguments up so they could be addressed? Again, Your Honor, I respectfully disagree with that characterization of the events. I think that the plaintiffs still believe that the process was possible around the end of 2014 and the beginning of 2015. They were cooperating with it. And this is a process where it's completely open-ended. There's no rules on it. There's just a couple of statutes that govern how this transition to get out from under the authority of the Oregon Department of Forestry takes place. There's ORS 527.730, which says that nothing about the Oregon Forest Practices Act prevents a change to another type of land use. There was no particular form. As in the record, the supplemental excerpts, pages one to three, you can see that their initial plan was just scribbled out on a legal pad, and that was considered their submittal. Right, but when the agency came back and said, you know, show us that you've got your necessary permits or that you don't need them, and then there was, it seems to me, a lack, or at least an alleged lack of compliance, a finding of a lack of meeting those requests, and then no appeal from that determination. The agencies at issue wouldn't have been before the administrative law judge or the court of appeals if they had appealed that, because it was failures to act on the part of two or three other agencies. There's Josephine County. There's the Department of Environmental Quality. There's Oregon Department of Fish and Wildlife. And all of these agencies wouldn't have been before the administrative review process. It was just that order from Oregon Department of Forestry. And so what's reviewed is fairly narrow, but the plaintiffs have a strong suspicion, not just a suspicion, based upon actions of specific defendants that specific people were coordinating around the agencies to make sure that no approval would be forthcoming. Oregon Department of Environmental Quality refused to respond for like three years to many requests for feedback on this. It took three years. Let's back up a little bit here, because I'm not sure I understand. I think the PFAB denial letter, Pete, specifically the attachment from the Department of Fish and Wildlife, noted there are opportunities for brimstone to mine along Brimstone Gulch. So it seems like that indicates that you could probably engage with the ODF and maybe come up with some resolution to this, because it appears from that that they have not conclusively prohibited you from mining. And it seems like you're arguing that there was some sort of animus and it didn't plan on approving it. That document there seems inconsistent with that. I agree that those couple of letters in 2014-2015 seem completely reasonable, devoid of the other context. It sounds like Oregon Department of Forestry is just making sure that the stream is not damaged, that they don't go and clear-cut the property and create a damaging environmental situation. So that begs Judge Forrest's question. Why not simply file another PFAP request instead of file a lawsuit? Well, a key part of my client's allegations is that they were repeatedly filing PFAPs with as much specificity as that original scribbled application. Over and over again, counsel for plaintiff, it's an allegation. We're at motion to dismiss. Fair enough, fair enough. Yeah. And so over and over again, for a period of time, it was monthly. Counsel for plaintiffs was reaching out to these agencies. They were reaching out to Oregon Department of Forestry saying, can we get an approval now? It's been three years, and we finally have gotten past the county hurdle. Can we get an approval now? And they would be the response would be, no, it's too late. You have to start over. You have to get approvals again. So let me be, I'm trying to sort of fully understand the history and how this developed. Are your clients saying that they were being given the runaround before the March 2015 denial? I don't think that they thought that they were at that point. I mean, my understanding from the pleading is that they just didn't even recognize, I mean, they didn't mention that there was a denial, sort of ignored that fact or forgot it. I mean, I don't know. Yeah, well, I think, honestly, I think my client lost the record of having received that letter, but they totally did receive it. And so it was missed in the pleading. But it doesn't change the underlying fact that they were continuing to apply and reach out to Oregon Department of Forestry. Okay, but go back to my first question is, the way I read the allegations in the complaint, that that same sort of character of allegation of we're being given the runaround was occurring before March 2015. Am I reading the complaint wrong? No, I don't think that they thought that they were being given the runaround until around that time when that denial came out, around the beginning of 2015. Because in November 2014, this is, again, supplemental excerpt pages 1 to 3, that's when Plaintiff West sat down with one of the defendants and they wrote out that plan and he signed it. So, I mean, they were still all cooperative to that point. And then, you know, two or three months later, this denial letter came out and there was also a lot of subsequent events. The same individual from Oregon Department of Forestry, or Oregon Department of Fish and Wildlife, that sent the letter saying, here's the problems I have, but there's still room for us to work this out. That same individual testified at a county hearing later in 2015 that he would not permit plaintiff's plans to proceed as long as he was able. The plaintiffs were directly told that, that you're never going to get any approval from us. The defendant, ODF, Oregon Department of Forestry, was unclear within itself as to when plans for alternate practice were expiring or wouldn't be accepted anymore. They were told in one letter that they had until the end of 2015, which is long after the appeal time. So, all this goes to say is that there's not a clear process here. There's just a couple of statutes, one regulation, that governs this change of process, change of character of the land from forestry to something else. And it's not like it's a one-time thing that when the event is completed, then it can be appealed. It's a continual back-and-forth process. In fact, that's how it worked for almost everyone that goes before the Department of Forestry. A lot of people went in, we have allegations, they went in and received a change of use the same day. They wanted to build a subdivision. Fine, you can do it. Plaintiffs were singled out because of personal disagreements that they had with particular defendants who then got allies on board from other agencies. So, I understand your argument is that the allegations are continuing and you couldn't have brought them up. Had your clients appealed the 2015 denial, you couldn't have brought up the claims you're bringing now because it hadn't happened yet, basically, is your argument. If we disagree with you and think, no, you could have brought these due process and other arguments at the time that the 2015 denial was issued, does claim preclusion apply? Our argument against claim preclusion relies on the same facts, that this is an ongoing process, it's not a final thing. My question is asking you to assume that, I mean, the rule on claim preclusion is that if there's an available way to challenge or to litigate an issue, whether you take it or not, the claim is precluded. So, if we conclude that the claim existed at the time that your clients could have appealed the March 2015 decision, doesn't claim preclusion apply? I hesitate to agree with you on that point. I'll make this point that there's exceptions to claim preclusion that there must be finality, and it seeks to avoid splitting of claims. I don't know how finality would apply when we're in a scenario where your client didn't exercise the ability to pursue the review and the claim preclusion rule is, if you have an available avenue, whether you take it or not. Right. I mean, it became final because they didn't take that road. So, Your Honor, I respectfully disagree that they could have possibly known about what these claims, at the beginning of 2015. Okay, so that is your argument. Yeah, yeah. And otherwise, okay. Yeah, if they had all the information, again, this is a word motion to dismiss. I mean, if we had discovery, it might be a different argument. So, I have one other sort of procedural question. The district court made a series of decisions in this case. In the last decision for equal protection and due process, the district court dismisses for claim preclusion reasons. Right. Previously, he had dismissed those claims on the merits. As we sit here today, do you think that we could resolve those claims on the merits as opposed to based on claim preclusion? Yes, and it's based on the same facts. So, on due process, the court actually reversed itself on the basis of Matthews and Eldridge. I think this is an error in defendant's brief. At ER 2324, it said that due process was still alive just on the basis of, you know, the private interest and the risk of erroneous deprivation. You know, those things from Matthew and Eldridge. The district court accepted that, and so the primary objection is just claim preclusion as all that remains, in my view, on due process. And again, with equal protection, again, it's the same argument. Like, all those actions of defendants aimed at plaintiffs personally make the equal protection claim strong, in my view. I'll reserve my 30 seconds. Thank you. Thank you. May it please the court, counsel Carson Whitehead for the Department of Forestry and the other defendants. So, I think this case really is controlled by plaintiffs' failure to appeal and take advantage of the Oregon administrative process for the decisions by the Department of Forestry that are in this record. Those decisions started in 2013 with the citations issued to Brimstone for logging in the riparian area around Brimstone Creek for doing that unlawfully in violation of the Oregon Forest Practices Act. There was a contested case hearing under the Oregon administrative process for that violation, and Brimstone did not appeal that to the Oregon Court of Appeals. There is subsequently a citation for damages and then later an order to repair issued based on those 2013 violations, and those were not appealed either. And then in the midst of that process, Brimstone filed the PFAP to have an alternative practice. And essentially, as I understand the allegations and the record to say, instead of following the reforestation requirements under the Oregon Forest Practices Act, after you log, we want to file this alternative practice that would relate to our mining activities. And as I put in the supplemental excerpt of record, ODF denied that application and fully informed Brimstone of its appeal rights, how it would go about taking advantage of the Oregon administrative process, and that didn't happen. And so where we're left... Why did it take the state three years to come up with that fact? And I... That was an oversight in our review of the case at trial. I mean, that could have very much simplified this case. I fully agree, Your Honor, and that is our fault. Does that matter? I don't think so. I mean, the preclusive, the finality of that administrative order, it's there, it's in the record now. It would have simplified the process at trial had we discovered that earlier. But I don't think that matters legally. There has been an argument from Brimstone that they were in any way prejudiced by that. And as Mr. Kincaid indicated, his client apparently also forgot to inform Mr. Kincaid about the denial letter. Can you address then the argument that it doesn't matter that they didn't exercise their right to appeal from the denial of the PFAP application because part of their claim rests on events that occurred after that denial? Well, I think the district court resolved that correctly because it said the key component of all of their claims for due process and equal protection, I think that's what's really at issue on the subsequent behavior. Those still rest on this PFAP process being a sham and being a process that doesn't result in an order that there's no ability to get review of that. And so it's a process argument saying that, well, they just keep giving us the runaround and the fact is that they had an opportunity to appeal and that there was a conclusion to like the 2015, the 2014 application for the plan for alternative practice was denied. They were given notice and they didn't appeal. And so that became final. And so to the extent that there's any, you know, the runaround that's alleged that happened later, I think it just fundamentally doesn't state a claim because there's no, like there's no government action there that's happened. I mean, the government action that happened was final and not appealed. I mean, in a way, that seems to be more almost an argument on their merits.  because they had the right to appeal. So it's the claim preclusion argument almost while it conflates with the merits argument. And I think that's right, Your Honor. And, you know, in some ways, that's the simplest way to resolve this. And I think in the three overlapping district court orders are somewhat confusing because they dealt with because of the way that the parties litigated this. But as I read the, I believe, the first district court order said none of these claims, there are no valid claims here. So it said, it made the preclusion ruling and administrative exhaustion ruling, but it also said, we don't think any of these state a claim. Then in the, I believe, the second order, it said, well, no, based on the whatever version of the amended complaint that says we're not just talking about the initial citations and the order to prohibit, there's this PFAP process that's apparently open-ended. And then that's when we move for judicial notice, submitted the PFAP application and the order and said, oh, no, this is actually denied. And so we think the district court did rule on that. But, I mean, ultimately it's a legal question whether Brimstone stated a claim so this court could reach it. And I think the district court did that correctly. So I want to make sure I understand how this works. So even if they had appealed and fully exhausted their review process of that denial in 2015, is it true that they still could have reapplied? Yes, Your Honor. So if that's true then, and they have alleged that that's in fact what they did, that they reapplied, then why doesn't that create its own freestanding claim that we can look at that would not be claim precluded because it could not be brought as part of application one? So, Your Honor, I looked back over their complaint because I was surprised to hear counsel say that they had in fact applied again because I don't believe that's a fact that's pleaded in their complaint. It says they were in contact with ODF about kind of the process or about the property. But there's nothing in this record that shows that plaintiffs actually filed for, you know, filed another plan for alternative practice. And there's nothing prohibiting them from filing the plan for alternative practice tomorrow and then going through the state administrative process. I mean, this isn't... That's a question I had. So there's no time limit? I mean, they could go and file the reapplication? That's correct. I mean, I'm not aware of anything in Oregon law that would prevent them from doing that. Because, I mean, essentially, I mean, the way the... Going back to the structure of the Forest Practices Act, it contemplates that as individuals are logging in Oregon, they file plans with the Department of Forestry to make sure they're, you know, respecting riparian buffers, that they're reforesting according to standards. And so when they've logged and they say, well, we want to do something different. So in this case, it was that they logged and commercially sold the timber, the merchantable timber on this property, but didn't file a plan, didn't follow Oregon law. And so the alternative process would be, okay, this is how we're going to fix it instead of... As an alternative. So they could still do that. If I understand correctly, the original citation in an order for that... On the very first logging... Yes. That ordered a fine and essentially a replanting of trees, that order was never complied with or was not complied with because there was an understanding that they could essentially negate the order by getting a successful PFAP application. That's correct. The timing, I think, matters there because apparently at... I think it was even at the administrative hearing for the 2013 violation, ODF talked about the PFAP process. And after that hearing, so after the initial citation issued, then is when, I think, 10 or 11 months later, Brimstone filed the PFAP. And then when we get to 2016 is when ODF issued an order to prohibit, saying, okay, we don't have an approved PFAP. You still haven't reforested. And so we're saying no more commercial, no more forest operations until you comply with Oregon law. Essentially, they could do this. They could apply for PFAP, but they couldn't just take however long they wanted to apply and conclude that process without complying with the order to pay the fine. And at some point, there was a decision like, you've run out of time. You need to comply. That's correct, Your Honor. I did want to follow up and clarify something on the takings argument on the state of claim that you're making. It seems like you argue that Brimstone's takings claim, it wasn't or isn't right because they failed to exhaust the administrative remedy. That was on my list of things to apologize for, Your Honor, that I quoted Williamson, and that is no longer good law, and that was entirely my mistake, and I apologize for it. So he did not need to exhaust state administrative remedies before being able to bring a takings claim. Although I think he still could have alleged a Fifth Amendment takings or takings under Oregon law saying that in a contested case proceeding under Oregon administrative law saying you can't take this action against us without compensation, saying that that's a reason why the agency action would be unlawful. So I think preclusion would still apply to the extent that that relies on the PFAP. The district court didn't rely on preclusion for the takings claim, right? That's correct. What could, I guess, just been talking about this, but there was a do over here. What could Brimstone do differently to obtain approval of PFAP in the future? I mean, it's all, it's highly technical, so I think it's a little bit difficult to say, like, what's, because I think it would depend on the status of the property now in 2023, and I think all the facts in this record are, you know, in terms of, like, their application denial are, you know, 7 or 8 years old at this point. No, longer than that, almost 10 years old at this point. So, I mean, I, so they would, you know, put in an application, propose this alternative practice in, you know, likely in communication with the agency, which I know the relationship between plaintiffs and the agency is not good, but they could submit this plan, and ultimately if they didn't like what the agency did, the agency would deny it, and then they can take it up to the Oregon, they can go to a contested case in front of an administrative law judge and make all the legal claims, all the process claims about the PFAP being a sham, about it not having an endpoint, about just, they could raise all of those things. So, I'm not quite sure what exactly, like, the facts that would need to be in a PFAP for it to be approved, but if it were denied, they'd have the full array of administrative remedies available. So, if the court has no further questions, we ask that you affirm. Thank you. Thank you. I'll give you a minute. So, this is precluded, but basically Oregon Forest Practices Act got applied to this property almost by accident. It was never forestry before, and again, this is water under the bridge, but it helps explain where plaintiff is coming from to some degree, that they got stuck under this statutory regime and nothing they can do seems to allow them to be able to escape it. And again, our contention is that they have repeatedly been applying for change of use up through 2017. ER page 45, paragraph 90 is the allegation we're relying on for that statement. The plaintiffs were directly told repeatedly with animus that they would not be able to go forward with their plans. Counselor, I have one question before you run out of time. When you were up here earlier, I was asking you about whether the record showed that your clients had applied subsequent times, and you correctly pointed out, we're on a motion to dismiss. And now I know why I was confused by that. I'm remembering the way I read your complaint, they applied and it was never resolved. And so there's allegations about, and then we talked to this person and then we talked to that person, whatever. But the complaint is structured as we applied and we were never given a decision. Turns out that's not true. So is there somewhere in your complaint as it exists now that actually says you filed a subsequent, or your clients filed a subsequent application? Yeah, that was the citation I just gave, ER 45, paragraph 90. That's the clearest statement of that. Can you repeat that? ER 45, page 45, and it's paragraph 90, middle of the page. So... Your concluding statement. Defendants, if defendant's preclusion is granted, I would argue that basically proves a taking. The plaintiff's property has basically been occupied by eminent domain and all but name. It's a park that they can't log, they can't do anything else with. That's all, Your Honor. Thank you. Thank you both. Thank you both for your oral argument and presentations here today. The case of Princeton Natural Resources versus David Haidt is submitted.
judges: MURGUIA, FORREST, SUNG